ED. P. PHILLIPS ET AL., INDIVIDUALLY AND TRADING
AS PHILLIPS MACHINERY AND TRACTOR
COMPANY *v.* THE J. F. JOHN-
SON LUMBER COMPANY

[No. 58, September Term, 1958.]

*Decided January 20, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John G. Wharton,* with whom were *Barton, Wilmer, Bramble & Penniman* on the brief, for appellants.

*Marvin H. Anderson,* with whom were *Marvin I. Anderson* and *Anderson & Anderson* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The J. F. Johnson Lumber Company (Johnson), the appellee, sued the appellants, trading as Phillips Machinery and Tractor Company (Phillips) for the conversion of a Terratrac Bulldozer loader, Model 30, upon which Johnson claimed to hold a chattel mortgage, duly recorded. The case was tried before the Circuit Court for Anne Arundel County, without a jury, and resulted in a verdict and judgment for Johnson for $1,200, the agreed value of the bulldozer at the time of the alleged conversion, plus interest and costs. Phillips appealed.

The question presented is a narrow one—the sufficiency of the description of the bulldozer in the chattel mortgage—and it is not free of difficulty.

There is no dispute as to the facts, many of which were stipulated. In brief they are as follows: On August 3, 1955, Joseph E. Glover and wife executed a chattel mortgage to Johnson to secure an indebtedness in excess of $31,000, of which more than $21,000 remained unpaid at the time of the alleged conversion. The mortgage purported to cover sev-

eral motor trucks and passenger motor vehicles as well as sundry equipment of various kinds, including drills, a sanding machine, various saws, an electric generator, an electric motor, a water pump, four wheelbarrows, two concrete mixers, several other items and the bone of contention in this suit, described in the mortgage as "1—Terratrac Bulldozer loader —Mod. 30". The motor vehicles (both the trucks and passenger cars) were described by make, type, year and serial number (and one truck apparently by motor number as well). The remaining items, with perhaps one exception, were not described by serial numbers, though some of them probably had such numbers. We are not, however, concerned with them.

On May 21, 1956, Phillips sold to Joseph E. Glover an International Crawler Tractor under a conditional contract of sale and accepted as part payment thereon a Terratrac Bulldozer loader, Model 30. This was the only piece of equipment of its kind owned by Mr. Glover at that time and, according to the testimony of one of his employees, the only one which he had owned since August, 1955. The appellants asked him if it was free of encumbrances, and upon receiving an affirmative answer made no further investigation before accepting it in trade. The loader has since been resold by Phillips.

It is conceded that Phillips made no examination of the chattel records for the purpose of determining whether there was a lien upon the Terratrac Loader, and there is no question that the loader covered, or purportedly covered, by the mortgage is the same loader which was taken in trade by Phillips. By stipulation of the parties the sole question to be decided in this case is the sufficiency of the description of the bulldozer loader contained in the recorded chattel mortgage to establish a lien in favor of the mortgagee, valid as against the claim of a subsequent bona fide purchaser.

Under Code (1957), Article 21, Section 46 (Section 54 in the 1951 Code) a mortgage of personal property shall be executed, acknowledged and recorded in the same manner as a bill of sale; and under Section 42 of Article 21 of the 1957 Code (Section 50 in the 1951 Code), "[a]ny bill of sale of

personal property shall be sufficient in form if it contains the names of the parties, the consideration, a description of the property conveyed, and be signed and sealed by the vendor, and dated." The vital words, so far as this case is concerned, are "a description of the property conveyed".

. Sections 42 and 46 of Article 21 of the 1957 Code and Section 5 thereof (as well as Sections 68, 77, 78 and 80) have as their source Chapter 154 of the Acts of 1856. They are unchanged in substance (insofar as they are pertinent to this case) from the corresponding provisions of the Code of 1860, which were derived from the statute just cited; and these Sections of the present Article 21 are identical in terms with the corresponding Sections of the 1951 Code, which were in force when the transactions here involved took place. Chapter 154 of the Acts of 1856 revised the laws with regard to conveyancing and dealt, *inter alia,* with deeds conveying real property, bills of sale of personal property and chattel mortgages. That statute set out various forms of conveyances, including general forms of a deed of real estate (§ 26), of a bill of sale (§ 124), and of a chattel mortgage (§ 137) and by companion sections (§§ 27, 125, 139, respectively) declared instruments executed in accordance with these statutory forms to be sufficient. That Act also contained a specific Section (§ 24) setting forth the requirements of a valid deed conveying real estate, one of which was that it should contain "a description with reasonable certainty of the property therein conveyed." This was changed in form rather than substance in the Code of 1860, Article 24, Section 9, to "a description of the real estate sufficient to identify the same with reasonable certainty." This language continues in Section 5 of Article 21 of the 1957 Code.

Chapter 154 of the Acts of 1856 contained no counterpart of § 24, *supra,* as to deeds setting forth the requirements of a valid bill of sale or of a valid chattel mortgage. However, the draftsmen of the Code of 1860, (which was enacted by Chapter 1 of the Acts of 1860 "in lieu of and as a substitute for all the Public General Laws and the Public Local Laws, heretofore passed by the Legislature of Maryland"), supplied such a counterpart through Section 41 of Article 24

as to bills of sale and through Section 47 as to chattel mortgages. Section 41 put together the several elements contained in the form of a bill of sale given in § 124 of Chapter 154 of the Acts of 1856 and the validating provision contained in § 125 of that statute. These provisions of §§ 124 and 125 corresponded closely to those of § 137 and § 139, *supra.* Section 47, instead of making a similar combination of §§ 137 and 139, simply provided that chattel mortgages should be executed, acknowledged and recorded as bills of sale. The provisions of these Sections have been carried forward without change in text in subsequent Codes.[1]

Notwithstanding the historical difference in origin and the difference in text between Sections 5 and 42 of Article 21 of the Code (1957), the description required by the latter Section has been construed as substantially the equivalent of that required by the former. Thus, in *State, Use of Horsey v. Maryland Casualty Co.,* 164 Md. 69, 163 A. 856, this Court said (164 Md., at 76) : "[U]nless there is a description sufficient to identify the subject-matter intended to be granted with reasonable certainty, according to the nature of the subject, the bill of sale is defective, and title does not pass." That case involved a bill of sale which was held to be an equitable mortgage, and the description therein contained was held to be insufficient. In support of the rule quoted, Judge Parke, writing for the Court, cited Code [1924], Article 21, Sections 45, 44 (Sections 42, 41 of the 1957 Edition) and *Fersner v. Bradley,* 87 Md. 488, 492, 493, 40 A. 58, involving a bill of sale. He also referred to *Berry v. Derwart,* 55 Md. 66, 72, and *Schaidt v. Blaul,* 66 Md. 141, 144, 6 A. 669, both of which involved title to real estate. The fatal defect in the deed in the *Berry* case was in the description of the property, which did not specify which side of a street certain lots lay on, and which did not purport to convey either

---

1. The forms of conveyances set out in §§ 26, 124 and 137 of Ch. 154 of the Acts of 1856 were codified in Secs. 52, 61 and 64 of Art. 24 of the Code of 1860; and an omnibus validating clause, Sec. 66 of that Article embraced corresponding provisions of §§ 27, 125 and 139 of Ch. 154 of the Acts of 1856. These provisions are now contained in Secs. 68, 77, 78 and 80 of Art. 21 of the 1957 Code.

all of the grantor's realty or all of his lots located on the particular street. In the *Schaidt* case, a defect which was pointed out was the omission of the name of the grantee, but the case did not turn on it. It was, however, the occasion for a *dictum* (66 Md. at 144) to the effect that the policy of the Registration Acts required that "every circumstance should appear on the face of the registry, which is necessary to the devolution of the title to real estate."

In the *Fersner* case this Court held that a description of some property in a bill of sale simply as a half interest in eight horses located in a particular county, without any statement as to who owned the other half interest or any description of the horses by color, name or distinctive marks, was insufficient. It was also held that the description of an interest in sundry vehicles set forth in the same instrument as "one-half interest in five single buggies, one-half interest in six double rigs * * *" was insufficient to pass title as against a judgment creditor of the vendor. As to the vehicles it was said that "[I]f they could not be designated by the name of the manufacturer or particular style of vehicle, it could at least have been stated where they then were, who owned the other half, or some description given that would enable persons who might be interested to form some idea as to what particular vehicles were intended to be included." 87 Md. at 493.

In the *Horsey* case it was held that the description of certain chattels in the bill of sale was so defective as to prevent title to the subject matter from passing even as between the immediate parties thereto. Included with many smaller items described as "25 fenders; 7 wheels, 2 Truck Wheels;" etc., were listed "3 Tractors; * * * 1 Oakland Touring car; 1 Ford Touring car; 1 Ford Coupe."

Phillips' contention is in essence that, in order to be valid as against third parties having only constructive notice, the description of mass-produced machinery or equipment in a chattel mortgage must contain the serial number (or its equivalent), if there is one. Phillips relies upon the *Fersner* case, particularly the statements therein relating to the buggies, but naturally relies more strongly upon the following

passage from the *Horsey* case, which immediately follows the description of the property there involved which is set forth above and which precedes the statement of the rule which we have already quoted from that case. "While some of the smaller articles are not susceptible of any more accurate description than the place where they were located and in whose possession they were and would remain, the more important goods and chattels can be described with certainty. Although there are numerous cash registers of the same make, and many automobiles and tractors of the same manufacture and design as those named in the bill of sale, yet every one may be positively identified by its motor or serial number, yet none is given. No attempt is made to describe anything distinctly; * * *."

Other language in the opinion, however, indicates that several factors contributed to the court's conclusion. It was pointed out that the instrument contained no covenant or warranty of title nor was any mention made as to the premises, town, county or state where the articles were located. It is also worthy of note that the vendor operated a garage and dealt in automobiles, automotive parts, and their accessories, and at least a portion of the items purported to be included under the bill of sale were subsequently disposed of in the ordinary course of business. It is also apparent that not even the make of the tractors was stated, nor was there any description of them by model or type.

In *In re Oliver C. Putney Granite Corp.,* 14 F. Supp. 31 (D. C., Md.), a bankruptcy case, Judge Chesnut had occasion to consider the validity under Maryland law as a chattel mortgage of an instrument which contained the following description: "All the tools, machinery, appliances and other personal property now used by the mortgagor in the operation of its stone-cutting plant located upon the real estate hereinbefore described, including specifically one Electric Crane one Electrically driven Compressor one Gang Saw Carborundum Saw Polishing Mill Surfacing machine and Pneumatic tools." After referring to the *Horsey* case, Judge Chesnut said (p. 34): "In that case the very general description of the articles covered by the bill of sale or mortgage

was held insufficient but principally, as I read the case, because there was not (as there is here) any designation of the location of the property or anything whatever to distinguish it from other articles of the same kind or class."

\* \* \*

"But in this case the mortgage does specifically describe the location of the premises where the articles are to be found and, according to the testimony, those that still remained are of such nature that they can very readily be identified from the description in the mortgage."

In a later bankruptcy case, *In re Nickulas,* 117 F. Supp. 590 (D. C. Md., affd. *per curiam sub nom. Tatelbaum v. Refrigeration Discount Corp.,* 212 F. 2d 877 (C. A., 4th)), Judge Chesnut had before him the Uniform Trust Receipts Act, as adopted in Maryland by Chapter 268 of the Acts of 1941, Code (1957) Article 95½, Sections 1-20. That statute does not require a trust receipt itself to be recorded, but does provide, among other things, for filing by the "entruster" with the State Tax Commission (under Section 13) of a statement of trust receipt financing signed by the "entruster" and by the "trustee" (as those terms are defined in Section 1), and that the form of such a statement (under Section 13 (2), shall show that the transactions to be financed under trust receipts are to be "the acquisition by the trustee \* \* \* of goods of the following description: (coffee, silk, automobiles, or the like.)" To constitute a trust receipt under Section 2 there must be "a writing designating the goods, documents or instruments concerned." In the *Nickulas* case (which was more or less the converse of the instant case) two refrigerators were described by model number and serial number in a writing claimed to be a trust receipt, but the name of the manufacturer was not given. Judge Chesnut, in a characteristically thorough opinion construing this then new Maryland Act, which had not been construed by this Court, looked for analogies in decisions relating to chattel mortgages and conditional contracts of sale, and held the description good, saying (pp. 594-595) : "Such descriptions have generally been held sufficient where on their face or by satisfactory parol evidence, especially when coming from

persons familiar with the particular trade, they [the goods in question] can be identified." He cited the following Maryland cases relating to chattel mortgages: *Salabes v. Castelberg,* 98 Md. 645, 57 A. 20; the *Horsey* case, *supra;* and *U. S. Fire Insurance Co. v. Merrick,* 171 Md. 476, 190 A. 335. He also cited the *Putney Granite Corp.* case, *supra,* and several cases pertaining to conditional contracts of sale which arose under the laws of other states. Cf. *In re Yost,* 107 F. Supp. 432 (D. C., Md.), in which the entruster held no trust receipts at all as to some goods upon which he claimed a lien, and substitutions had occurred on trust receipts covering other goods. The entruster was there held to have no lien.

Not a great deal of aid can be derived from a comparison of the requirements of our statutes relating to the descriptions required in other more or less related statutes. Perhaps the most detailed description required is to be found in a statute which is not a recording statute—Code (1957), Article 66½, Section 24 (2), which requires the serial number (where available) of a motor vehicle to be stated in an application for a certificate of title thereon or for registration thereof. That Section does not appear applicable to the kind of equipment here involved. (See Code (1957), Article 66½, Sections 2 (55) and 23.) Section 66 of Article 21 of the Code (1957), relating to conditional contracts of sale, provides that a memorandum of such a contract, duly recorded, shall be sufficient, insofar as the description of the property is concerned, if it sets forth "a brief description of the goods and chattels therein mentioned." Code (1957), Article 83, Section 129, a part of the Retail Installment Sales Act, requires an installment sale agreement to "contain a clear description of the goods subject [thereto] * * *, which shall be sufficient to identify them readily." The next Section, Section 130, while generally prohibiting the acceptance by a buyer, sales finance company or holder from a buyer, or any surety or guarantor for the latter, of an instrument containing any blank spaces to be filled makes an exception under which "if an installment sale agreement contains, at the time of execution, a sufficient description of the goods pursuant to § 129, further serial num-

bers or other identifying marks on the goods may be inserted in the agreement upon the delivery of the goods."

Perhaps the most that can be derived in the present case from the above comparison is that the reason for the more detailed description of the motor vehicles than of the bulldozer in Johnson's mortgage may have been the ready availability of such description on the registration cards pertaining to those vehicles.

The *Salabes* case, *supra,* involved a duly recorded chattel mortgage on a diamond ring. The following description was held sufficient to impart constructive notice to one in the position of an innocent purchaser for value: "one single stone diamond ring, Tiffany setting, diamond weighing 7-8 1-64 karats, 6583 Iahs". There were no identifying marks on the ring. This Court apparently felt that it would have been difficult to describe the ring more definitely than was done. It clearly stated (98 Md. p. 653) that "if the appellant had examined the record he would have received such information as to put him on inquiry to further identify the ring." Further, in distinguishing the *Fersner* case, this Court said (at p. 654): "But in this case as the only description that could reasonably be expected was given, and that was ample to put persons dealing with the ring on inquiry, the mortgagees should not be made to suffer." The Court continued: "It is not pretended that the appellant was misled by the description that was given, * * *. Any person of ordinary intelligence would be warned by the information given in the mortgage not to accept such a ring as is therein described from Linthicum [the appellee's mortgagor and the appellant's pledgor] and after all that is the great object in recording chattel mortgages."

We fully agree with the statement in *U. S. Fire Ins. Co. v. Merrick, supra* (171 Md. 487) "that a general description may lead to controversy as to the articles intended to be granted in the mortgage, and the better practice is that such chattels be specifically described; * * *." However, something less than the best possible description may be sufficient.

The nature of the property is, we think, a matter of importance in a case of this kind. See *State, Use of Horsey*

*v. Maryland Casualty Co., supra,* (164 Md. at 76) and the *In re Oliver C. Putney Granite Corp.* case, *supra,* at p. 34. We may assume that the *Horsey* case supports the appellant's contention that a description of a cash register simply by make or of an automobile simply by make and general type is insufficient. We may also assume that under that case a description reading merely "3 Tractors", without any description of make, type, model, horsepower, serial or motor number is insufficient. That, however, is not the case we have here, nor, we may add, was the mortgagor here a dealer in bulldozers or tractors.

We think that contractors' earthmoving equipment is more like farm machinery than ordinary automobiles or motor trucks and that decisions pertaining to such equipment are relevant. A number of cases on the "Sufficiency of description of property, as against third persons, in chattel mortgage on farm equipment, machinery, implements, and the like" are collected in an annotation under that title in 32 A. L. R. 2d 929. The case which that annotation follows is *Jackson City Bank & Trust Co. v. Blair,* 333 Mich. 399, 53 N. W. 2d 493, 32 A. L. R. 2d 920. In it the description "1 A-2 International Ensilage Harvester" in a recorded chattel mortgage was held to constitute constructive notice to a subsequent purchaser, even though the mortgagor in possession was a licensed dealer in such equipment. The Michigan Supreme Court noted that the defendant purchasers had made no showing that the mortgagor was in possession of more than one harvester of identical description, or in any case, that a proper inquiry would not have revealed the identity of the machine they purchased. A majority of the cases referred to in the above annotation are in accord with the *Jackson City Bank* case.

In a number of cases the fact that an implement or vehicle was the only one of its kind owned by the mortgagor has been held to support the sufficiency of a description even though this fact is shown by extrinsic evidence. See 14 C. J. S. *Chattel Mortgages,* § 59, and cases cited. Also see *United States v. Christensen,* 50 F. Supp. 30 (D. C., Ill.) where the

description "one tractor, Moline, 10-20 Farmall, condition good, year of manufacture, 1937" was held sufficient on this ground.

We believe that equipment such as the bulldozer loader here involved falls under the general rules relating to the sufficiency of the description thereof in a chattel mortgage or bill of sale. Under that rule a description in a duly executed, acknowledged and recorded chattel mortgage is sufficient to bind third parties without actual notice if, having in mind the nature of the property, the description is such as to enable third persons, aided by inquiries which the mortgage itself suggests, to identify the property. *Salabes v. Castelberg; U. S. Fire Insurance Co. v. Merrick; In re Oliver C. Putney Granite Corp.; In re Nickulas;* all cited above; Jones on *Chattel Mortgages and Conditional Sales* (1933 Ed. and 1956 Supp.), §§ 54, 55; 10 Am. Jur., *Chattel Mortgages,* § 55, pp. 752-753. We find no necessary inconsistency between this holding and the actual holding in the *Horsey* case when applied to the description of the tractors there involved, which, as noted, was simply "3 Tractors", without more. In the instant case, we think that the description of the bulldozer loader as owned by the mortgagors and located in Anne Arundel County, and by make, type and model set forth in the mortgage, aided by reasonable inquiries suggested by that description, would have enabled a third party to identify that piece of equipment, which was the only one of its kind owned by the mortgagors.

Accordingly, the judgment is affirmed.

*Judgment affirmed, with costs.*